## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

WOODY A. McDANIEL,

        Petitioner,

vs.

WARDEN JAY FORSHEY,

        Respondent.

CASE NO. 5:23-CV-01698

JUDGE JAMES R. KNEPP II

MAGISTRATE JUDGE AMANDA M. KNAPP

**REPORT AND RECOMMENDATION**

Petitioner Woody A. McDaniel ("Petitioner" or "Mr. McDaniel") filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 30, 2023, asserting four grounds for relief challenging his convictions and sentence for two counts of rape in Portage County Common Pleas Court Case No. 2017CR0440.  (ECF Doc. 1, ECF Doc. 11-1.)  After pleading guilty, Mr. McDaniel was sentenced to a term of imprisonment of life with eligibility for parole after fifteen years on one count and nine years imprisonment on the other count, with the sentences to run consecutive to each other.  (ECF Doc. 1, p. 1, ECF Doc. 11-1, pp. 60-61.)

The matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The case is briefed and ripe for disposition.  (ECF Docs. 11 & 13.)  For the reasons explained below, the undersigned recommends that the Court **DENY** and/or **DISMISS** Mr. McDaniel's Petition.[1]

---

[1] After the filing of his Traverse, Petitioner filed an Affidavit of Need, requesting that the Court appoint him counsel.  (ECF Doc. 14.)  This is Petitioner's second request for appointment of counsel.  (*See* ECF Doc. 7.)  In

1

## I. Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

In its December 31, 2020 decision, the Eleventh District Court of Appeals summarized the facts and background underlying Mr. McDaniel's convictions and sentence as follows:

> {¶ 2} On May 19, 2017, McDaniel was indicted on eight counts of Rape, felonies of the first degree in violation of R.C. 2907.02(A)(1)(b) ("[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age"); eight counts of Sexual Battery, felonies of the second degree in violation of R.C. 2907.03(A)(5) ("[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person"); and eight counts of Gross Sexual Imposition, felonies of the third degree in violation of R.C. 2907.05(A)(4) ("[n]o person shall have sexual contact with another, not the spouse of the offender * * *, when * * * [t]he other person * * * is less than thirteen years of age").
>
> {¶3} On August 7, 2017, McDaniel executed a WAIVER OF TRIAL BY JURY which provided:
>
> > I, Woody A. McDaniel, Defendant in the [present] cause, having been arraigned and having had opportunity to consult with counsel, in open Court hereby voluntarily waive and relinquish my rights to a jury, and elect to be tried by a Judge of the Court in which the said case may be pending.
> >
> > I fully understand that under the laws of this State, I have a constitutional right to a trial by jury.
>
> {¶4} On the same date, McDaniel entered a WRITTEN PLEA OF GUILTY to one count of Rape as charged in the Indictment, and a second count of Rape being a

---

denying Petitioner's first request for appointment of counsel, the Court found his arguments did not support a finding of exceptional circumstances to warrant the appointment of counsel. (ECF Doc. 10.) Petitioner's arguments again do not support a finding of exceptional circumstances to warrant the appointment of counsel. Accordingly, Petitioner's second request for appointment of counsel (ECF Doc. 14) is **DENIED**.

2

felony of the first degree in violation of R.C. 2907.02(A)(2) ("[n]o person shall engage in sexual conduct with another when the offender compels the other person to submit by force or threat of force"). The written plea contained the following acknowledgement:

> I have been informed by my Attorney and by the Judge that by pleading guilty I waive the following Constitutional Rights and I understand these rights and it is my intention to waive them:
>
> (a) My right to a jury trial.

{¶5} At the change of plea hearing, the trial court judge advised McDaniel:

> By entering these pleas of guilty, you're giving up your right to a trial. At that trial the prosecutor would have to prove beyond a reasonable doubt each and every element of the charges against you. Your attorneys could then cross-examine and confront the witnesses who come in to testify for the State of Ohio, you could subpoena or compel witnesses, have them come in and testify for you and you can take the stand at that trial if you chose to do so. You have a constitutional right not to testify, but if you wanted to you could, that along with those rights to trial you're giving up by entering these pleas of guilty; do you understand that?

McDaniel answered in the affirmative.

*State v. McDaniel*, 2020 WL 7863160, at *1 (Ohio App. Ct. Dec. 31, 2020); (ECF Doc. 11-1, pp. 111-13.)

## II.     Procedural Background

### A.     State Court Conviction

On May 19, 2017, a grand jury in Portage County, Ohio indicted Mr. McDaniel on eight counts of rape, eight counts of sexual battery, and eight counts of gross sexual imposition.[2] (ECF Doc. 11-1, pp. 4-28.)  On June 19, 2017, Mr. McDaniel filed a motion to sever the counts in the indictment, with the assistance of counsel, arguing that he would be unfairly prejudiced if all twenty-four counts were tried together because they arose from separate circumstances, on different dates, and involved two different victims.  (*Id*. at pp. 30-36.)  On July 6, 2017, Mr.

---

[2] A secret indictment was issued.  (ECF Doc. 11-1, p. 29.)

McDaniel filed a motion to suppress statements taken from or made by Mr. McDaniel, with the assistance of counsel, arguing that the statements were obtained in violation of his constitutional rights, and that he did not knowingly and voluntarily waive his Miranda rights.[3]  (*Id*. at pp. 37-41.)  Following the filing of these motions, on August 7, 2017, Mr. McDaniel signed a waiver of jury trial (*id.* at p. 42) and written plea agreement, pleading guilty to two first degree felony rape charges (Counts 1 and 13) (*id.* at pp. 43-44).  The written plea agreement stated that Count 1 carried a maximum prison sentence of life in prison without parole and Count 13 carried a maximum prison sentence of eleven years in prison.  (*Id*. at p. 43.)  The trial court accepted Mr. McDaniel's pleas at the plea hearing on August 7, 2017, finding that Mr. McDaniel knowingly and voluntarily entered his Written Plea of Guilty and finding Mr. McDaniel guilty.[4]  (*Id*. at pp. 45-46; *see also* ECF Doc. 11-2, pp. 1-21.)  The trial court accepted the State's Nolle Prosequi of the remaining counts in the indictment.  (ECF Doc. 11-1, pp. 45-46.)

On September 28, 2017, Mr. McDaniel filed a pre-sentencing brief (*id.* at pp. 47-59), asking the Court to impose concurrent sentences that included an indefinite term of life in prison with the possibility of parole after 15 years (*id.* at p. 52).  At the October 2, 2017 sentencing hearing, the trial court concluded that consecutive sentences were warranted and sentenced Mr. McDaniel to a term of imprisonment of life with eligibility of parole after fifteen years for the offense of rape as charged in Count 1, and nine years for the offense of rape as charged in Count 13.[5]  (*Id*. at pp. 60-62; *see also* ECF Doc. 11-2, pp. 22-38.)

---

[3] The motion to suppress was later withdrawn at the plea hearing.  (ECF Doc. 11-2, p. 8.)

[4] The Waiver of Trial by Jury, Written Plea of Guilty, and Judgment Entry from the August 7, 2017 plea hearing were docketed on August 8, 2017.  (ECF Doc. 11-1, pp. 42, 43, 45.)

[5] The sentencing order and journal entry was docketed on October 4, 2017.  (ECF Doc. 11-1, p. 60.)

**B.      Delayed Appeal**

On December 21, 2017, Mr. McDaniel filed a pro se notice of appeal (ECF Doc. 11-1, pp. 63-75) and a motion for leave to file a delayed appeal to the Eleventh District Court of Appeals (*id.* at pp. 76-83).  The court granted the motion for leave to file delayed appeal.  (*Id.* at pp. 85-86.)  The court of appeals appointed counsel for Mr. McDaniel (*id.* at p. 172) and Mr. McDaniel filed his appellate brief with the assistance of counsel on October 10, 2018 (*id.* at pp. 87-101).  He raised the following assignment of error:

1.      The trial court erred when it accepted appellant's plea without first determining that appellant entered the plea knowingly, intelligently, and voluntarily pursuant to Ohio's Crim. R. 11.

(*Id.* at pp. 90, 95-99).  Mr. McDaniel argued that the trial court failed to explain that he was waiving his right to a jury trial and therefore his plea was not knowingly, intelligently, and voluntarily made pursuant to Crim. R. 11.  (*Id.* at pp. 95-99.)  The State filed its brief on November 29, 2018.  (*Id.* at pp. 102-10.)  On December 31, 2020, the Ohio Court of Appeals affirmed Mr. McDaniel's convictions, with one of the three appellate judges filing a dissenting opinion.  (*Id.* at pp. 111-18.)

On January 15, 2021, Mr. McDaniel filed a motion for leave to file an application for en banc consideration instanter (*id.* at pp. 126-27) and an application for reconsideration and en banc consideration (*id.* at pp. 119-25) with the assistance of counsel.  The court of appeals granted Mr. McDaniel's motion for leave (*id.* at pp. 131-32) and the State filed an opposition (*id.* at pp. 128-30).  On May 6, 2022, the court of appeals denied the application for reconsideration and en banc consideration, with one of the three appellate judges concurring in the judgment as to the denial of the application for en banc consideration but dissenting as to the denial of the application for reconsideration.  (*Id.* at pp. 133-40.)

On June 21, 2022, Mr. McDaniel filed a notice of appeal with the Supreme Court of Ohio from the court of appeals's May 6, 2022 decision and a memorandum in support of jurisdiction, with the assistance of counsel. (*Id.* at pp. 141-57.) In his memorandum in support of jurisdiction, Mr. McDaniel presented the following propositions of law:

1. Due process and Ohio law require oral advisement of the waiver of jury trial prior to a plea and regardless of the existence of prior jury waivers.

2. Appellate court must confine their rulings to issues established by the trial court record.

3. Appellate courts must allow briefing on determinative matters not previously briefed.

4. Appellate courts must fairly construe and apply waivers contained in party briefing.

(*Id.* at pp. 144, 150-56.) On July 21, 2022, the State filed a response in opposition to appellant's memorandum in support of jurisdiction. (*Id.* at pp. 158-65.) On September 14, 2022, the Supreme Court of Ohio declined to accept jurisdiction.[6] (*Id.* at p. 166.)

**C.    Federal Habeas Corpus Petition**

On August 30, 2023, Mr. McDaniel filed the present pro se federal habeas corpus petition under 28 U.S.C. § 2254 (ECF Doc. 1), asserting the following grounds for relief:

> **Ground One:** Sixth Amendment right to jury trial denied.
>
> **Supporting Facts:** The trial court erred in failing to explain my right to a jury trial as guaranteed by the Sixth Amendment which states in part: "A speedy and public trial by an impartial jury of the state and district wherein the crime shall have been."
>
> **Ground Two:** State of Ohio deprived me of my Fifth and Fourteenth Amendment rights to due process.
>
> **Supporting Facts:** By not granting my appeal and my subsequent petition to the Supreme Court of Ohio my due process rights were violated. The

---

[6] Three justices dissented from the decision to decline to accept jurisdiction. *See State v. McDaniel*, 167 Ohio St.3d 1517 (2022).

6

trial court violated due process rights by not explaining those rights that I was giving up via the plea.

**Ground Three:**  A sentence of 24 to life is cruel and unusual punishment for crimes I did not commit and a violation of my 8th Amendment right.

**Supporting Facts:** I did not rape the victims in question I was told that I had no choice and was coerced into taking a plea.

**Ground Four:** My 6th Amendment right to effective counsel was denied.

**Supporting Facts:** Because my attorney coerced me into a plea for things I did not do and did not object to the court not addressing the rights I was supposedly waiving he was ineffective and this is a violation of my 6th Amendment right.

(*Id*. at pp. 5-11.)

### III.    Law & Analysis

### A.    Standard of Review Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214 ("AEDPA") limits the adjudication of federal habeas petitions in which state prisoners have collaterally attacked their convictions.  *See Reed v. May*, 134 F.4th 455, 459 (6th Cir.), *cert. denied sub nom. Reed v. Fredrick*, 146 S. Ct. 226, 223 L. Ed. 2d 78 (2025); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.").  Under 28 U.S.C. § 2254, as amended by AEDPA, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181 (citing 28 U.S.C. §§ 2254(a), (b), (c)).

7

"AEDPA's 're-litigation bar' applies when a state court denies a prisoner's claim on the merits, rather than denying it for procedural reasons." *Reed*, 134 F.4th at 459 (citing 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011)).  Under the "re-litigation bar," when a federal habeas application involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the State court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington*, 562 U.S. at 100.  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

The Sixth Circuit has explained that "AEDPA authorizes a federal court to grant a writ of habeas corpus for state prisoners only to guard against 'extreme malfunctions in the state criminal justice systems.'"  *Hodge v. Plappert*, 136 F.4th 648, 657 (6th Cir. 2025), *cert. denied*, No. 25-6179, 2026 WL 79639 (U.S. Jan. 12, 2026) (quoting *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022)).  This is because "Congress recognized that '[f]ederal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'"  *Hodge*, 136 F.4th at 657–58 (quoting *Harrington*, 562 U.S. at 103 (brackets in original).  "Congress designed 28 U.S.C. § 2254(d) to remind federal courts that 'state courts are the principal forum for asserting constitutional challenges to state convictions.'"  *Hodge*, 136 F.4th at 658 (quoting *Harrington*, 562 U.S. at 103).

**B.      Legal Standard for Procedural Default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  A state defendant with

federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987).  A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, procedural default applies where state court remedies are no longer available.  *See Williams*, 460 F.3d at 806.

9

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to

the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims.  *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.     Ground One is Not Cognizable and/or Without Merit

Mr. McDaniel argues in Ground One that his constitutional rights were violated, and his guilty plea was not knowingly and voluntarily made, because the trial court failed to personally discuss his right to a jury trial with him at his plea hearing, even though that discussion was required by Ohio Crim. R. 11.  (ECF Doc. 1, p. 5, ECF Doc. 13, pp. 5-8.)  In response, Respondent asserts that the state court of appeals considered the merits of the claim in Ground One, reasonably concluded that Petitioner's plea was knowingly, intelligently, and voluntarily made, and made a decision entitled to deference under AEDPA.  (ECF Doc. 11, pp. 15-19.)

For the reasons explained below, the undersigned concludes that Ground One is not cognizable on federal habeas review to the extent that it asserts claims under state law, and is without merit to the extent it asserts a federal constitutional claim.

### 1.     Legal Standard for Guilty Pleas

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

11

defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)); *see Spencer v. Campbell*, No. 21-2610, 2021 WL 6197324, at *2 (6th Cir. Dec. 17, 2021). A defendant waives a number of federal constitutional rights when he enters a guilty plea, including the right to trial by jury. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969). In *Boykin*, the Supreme Court explained that a waiver of "important federal rights" cannot be presumed "from a silent record." *Id*. at 243. Instead, the Court held that due process requires a defendant's waiver of federal constitutional rights to "be an intentional relinquishment or abandonment of a known right or privilege." *Id*. 243 n.5 (internal quotations and citations omitted). Accordingly, as the Supreme Court explained in *Brady v. United States*, a guilty plea must "not only . . . be voluntary but must be knowing, [and] intelligent . . . with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. 742, 748 (1970); *see also Boykin*, 395 U.S. at 243 n.5 ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

"A plea is voluntary if it is 'entered by one fully aware of the direct consequences.'" *Spencer*, 2021 WL 6197324, at *2 (quoting *Brady*, 397 U.S. at 755). "The record should reflect that the defendant understood the rights being surrendered . . ." *Id*. "It is good procedure, therefore, for a state judge to conduct a careful inquiry into the defendant's understanding of the nature and consequences of his plea." *Roddy v. Black*, 516 F.2d 1380, 1384 (6th Cir. 1975). However, there is no constitutional requirement that a trial court separately enumerate and obtain separate waivers as to each right waived. *See Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975), *cert. denied,* 424 U.S. 973 (1976) (agreeing with other circuits that "*Boykin* does not require separate enumeration of each right waived and separate waivers as to each"); *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (same) (relying on *Fontaine*, 526 F.2d at 516),

*abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010).   Instead, a court's

determination as to whether a guilty plea is voluntary must be based upon consideration of "all of

the relevant circumstances surrounding it."  *Brady*, 397 U.S. at 749.

### 2.        State Court Adjudication of Guilty Plea

In its December 31, 2020 opinion affirming Mr. McDaniel's convictions and sentence,

the court of appeals analyzed his argument that his guilty plea was invalid as follows:

{¶8} On December 21, 2017, McDaniel filed a Motion for Leave to File Delayed Appeal, which this court granted on February 20, 2018. On appeal he raises the following assignment of error:

{¶9} "The trial court erred when it accepted appellant's plea without first determining that appellant entered the plea knowingly, intelligently, and voluntarily pursuant to Ohio's Crim.R. 11."

{¶10} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). The trial judge has the responsibility of "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

{¶11} To ensure compliance with the constitutional mandates, Criminal Rule 11 was adopted. The Rule provides that "the court shall not accept a plea of guilty * * * without first addressing the defendant personally and * * * [i]nforming the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c); *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus ("[p]rior to accepting a guilty plea from a criminal defendant, the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses").

{¶12} In construing the requirements of Criminal Rule 11(C)(2)(c), the Ohio Supreme Court has insisted upon strict, but not literal, compliance. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 29. "Failure to use the

13

exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." *Ballard* at paragraph two of the syllabus; *State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 17 ("[w]e have never mandated that a trial court use particular words in order to comply with Crim.R. 11(C)(2)(c)").

{¶13} In the present case, the trial court's failure to advise McDaniel of a right he had already waived and no longer possessed could have had no effect on the voluntary and intelligent character of his plea. On the same day that he entered his guilty plea, McDaniel attested, in open court, that he unequivocally waived his right to be tried by a jury in favor of a bench trial. Given this unique circumstance, no legitimate interest is served by reversing the plea. To reverse on the grounds that the court failed to specify a jury trial "would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused," something the Ohio Supreme Court has professed itself "unwilling to do." *Ballard* at 480; *Hamilton v. Brown*, 1 Ohio App.3d 165, 170, 440 N.E.2d 554 (12th Dist.1981) ("[i]n all such inquiries, '[m]atters of reality, and not mere ritual, should be controlling'") (citation omitted) (Castle, P.J., concurring).

{¶14} We acknowledge that prior decisions of this court – *State v. Ralston*, 2018-Ohio-4946, 126 N.E.3d 234 (11th Dist.); *State v. Antoine*, 11th Dist. Portage No. 2018-P-0009, 2019-Ohio-414 – have reversed guilty pleas where the trial court advised the defendant during the plea colloquy that he was waiving the right to "trial" without mention of the qualifier "jury." These cases are distinguishable in that the defendants therein had not expressly and independently waived their right to a jury trial in favor of a bench trial. McDaniel's waiver is not challenged on appeal and so its validity must be accepted. To willfully ignore the existence of this waiver or its effect on the knowing and intelligent character of his plea in the present case would be to disregard the totality of the circumstances in which it was rendered. Neither law nor sense require us to do so.

{¶15} The sole assignment of error is without merit.

*McDaniel*, 2020 WL 7863160, *2-3.

### 3.  Ground One is Not Cognizable to the Extent it Seeks Relief for Alleged Violations of the Ohio Criminal Rules or State Law

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state

14

law."); *Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).  Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68 (citing 28 U.S.C. § 2241).  Here, while Mr. McDaniel cites to the Sixth Amendment of the U.S. Constitution in Ground One of the Petition (ECF Doc. 1, p. 5), his Traverse also cites to state law and dissenting state court opinions in support of an argument that the trial court failed to comply with state law, including the requirements of Ohio Criminal Rule 11 (ECF Doc. 13, pp. 5-8).

To the extent that the claim in Ground One is premised on alleged violations of Ohio's Criminal Rules or any other state law, the undersigned recommends that the Court **DENY** Ground One as non-cognizable on federal habeas review.

**4.      The Due Process Claim in Ground One Should be Denied on its Merits**

As to the federal due process claim set forth Ground One—that Petitioner's due process rights were violated when the trial court accepted his guilty plea without personally addressing him regarding the waiver of his right to a jury trial—this Court must consider whether the state court's denial of the requested relief: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

Respondent argues that the state court of appeals decision, which found Mr. McDaniel was aware of his right to a jury trial and knowingly, intelligently, and voluntarily entered his plea, was reasonable and is entitled to deference under AEDPA.  (ECF Doc. 11, pp. 18-19.)  In response, Mr. McDaniel argues "it is clear in black and white within the court transcripts that the

15

court did not personally address [him] concerning the waiver of his right to a jury trial," and asserts that this shows his plea was not knowing or voluntary and is invalid.  (ECF Doc. 13, p. 8.)

Beginning with the inquiry into whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1), Mr. McDaniel cites only one Supreme Court case in support of Ground One: *Brady v. United States*, where the U.S. Supreme Court explained that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."[7]  397 U.S. at 748; (*see* ECF Doc. 13, p. 8).  The Supreme Court had previously explained in *Boykin* that the wavier of "important federal rights," including a right to jury trial, cannot be presumed "from a silent record."  395 U.S. at 243.

Here, the written decision of the state court of appeals reflects that the court did consider the circumstances surrounding Mr. McDaniel's guilty plea—including the trial court's failure to advise Mr. McDaniel during the plea colloquy that he was waiving his right to a jury trial—before concluding that he entered his plea voluntarily, knowingly, and intelligently.  *McDaniel*, 2020 WL 7863160, *2-3.  The circumstances considered by the court of appeals included the fact that Mr. McDaniel executed a waiver of his right to *jury trial* in open court on the same day as his guilty plea, and the fact that the trial court's plea colloquy did generally advise Mr. McDaniel that he was giving up his right to a *trial*.  *Id.*  As the state court of appeals recounted:

> {¶3} On August 7, 2017, McDaniel executed a WAIVER OF TRIAL BY JURY which provided:

---

[7] While Petitioner cites to other federal and state court cases, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" as required under 28 U.S.C. § 2254(d)(1).  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012).  Thus, any standards set forth in federal circuit cases or state cases that are distinct from established Supreme Court precedent "cannot form the basis for habeas relief under AEDPA."  *Id.*

16

I, <u>Woody A. McDaniel</u>, Defendant in the [present] cause, having been arraigned and having had opportunity to consult with counsel, in open Court hereby voluntarily waive and relinquish my rights to a jury, and elect to be tried by a Judge of the Court in which the said case may be pending.

I fully understand that under the laws of this State, I have a constitutional right to a trial by jury.

{¶4} On the same date, McDaniel entered a WRITTEN PLEA OF GUILTY to one count of Rape as charged in the Indictment, and a second count of Rape being a felony of the first degree in violation of R.C. 2907.02(A)(2) ("[n]o person shall engage in sexual conduct with another when the offender compels the other person to submit by force or threat of force"). The written plea contained the following acknowledgement:

I have been informed by my Attorney and by the Judge that by pleading guilty I waive the following Constitutional Rights and I understand these rights and it is my intention to waive them:

(a)      My right to a jury trial.

{¶5} At the change of plea hearing, the trial court judge advised McDaniel:

By entering these pleas of guilty, you're giving up your right to a trial. At that trial the prosecutor would have to prove beyond a reasonable doubt each and every element of the charges against you. Your attorneys could then cross-examine and confront the witnesses who come in to testify for the State of Ohio, you could subpoena or compel witnesses, have them come in and testify for you and you can take the stand at that trial if you chose to do so. You have a constitutional right not to testify, but if you wanted to you could, that along with those rights to trial you're giving up by entering these pleas of guilty; do you understand that?

McDaniel answered in the affirmative.

*McDaniel*, 2020 WL 7863160, at *1; (ECF Doc. 11-1, pp. 42, 43, ECF Doc. Doc. 11-2, pp.

Clearly, this is not a situation like that contemplated in *Boykin*, where the state court presumed a waiver of constitutional rights based on a "silent record."  Instead, the state court explicitly considered the circumstances surrounding Mr. McDaniel's plea in detail before finding his plea knowing, intelligent, and voluntary.  *McDaniel*, 2020 WL 7863160, at *2-3.  In this context, the undersigned finds Mr. McDaniel has failed to show that the state court's decision

was contrary to or an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1). Certainly, he has not shown that the state court arrived "at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decide[d] a case differently than [the Supreme] Court ha[d] on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (some brackets in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

Turning to the question of whether the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), the undersigned also concludes that this standard has not been met. The state court of appeals noted that Mr. McDaniel executed a waiver of his right to jury trial on the same day that he entered his guilty plea, and that the validity of the waiver had not been challenged. *McDaniel*, 2020 WL 7863160, at *2; (ECF Doc. 11-1, p. 115). The court also correctly observed that Mr. McDaniel stated in his written plea agreement that he was waiving his constitutional right to a jury trial. *McDaniel*, 2020 WL 7863160, at *1; (ECF Doc. 11-1, p. 112). Thus, the record was not "silent" as to whether Mr. McDaniel knowingly, voluntarily, or intelligently waived his right to jury trial when entering his plea, and the state court reasonably concluded: "To willfully ignore the existence of [the] waiver or its effect on the knowing and intelligent character of his plea . . . would be to disregard the totality of the circumstances in which it was rendered." *McDaniel*, 2020 WL 7863160, at *3; (ECF Doc. 11-1, p. 115).

The Supreme Court has explained that a state prisoner seeking federal habeas relief "'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011)

18

(quoting *Harrington*, 562 U.S. at 103). The "standard is difficult to meet" and "was meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Here, Mr. McDaniel has not shown that the decision of the state court of appeals—which found his plea knowing, intelligent, and voluntary, notwithstanding the trial court's failure to personally address his waiver of the right to a *jury* trial during the plea colloquy—was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence. Accordingly, to the extent that Mr. McDaniel asserts a federal constitutional claim in Ground One, the undersigned recommends that the Court **DENY** Ground One on the merits.

**D.     Ground Two is Without Merit**

Mr. McDaniel's claim in Ground Two consists of two sub-claims. He asserts that his Fifth and Fourteenth Amendment rights to due process were violated: (1) when the state court of appeals did not grant his appeal and the state supreme court subsequently did not accept his petition for review; and (2) when the trial court did not explain the rights he was giving up when he entered his plea.[8] (ECF Doc. 1, p. 7, ECF Doc. 13, pp. 9-12.) Respondent argues that

---

[8] Mr. McDaniel also argues in his Traverse that there were delays in receiving a ruling on his appeal (ECF Doc. 13, p. 9), his "due process rights were violated from the inception of this case in trial court" because his *Miranda* rights were violated and his motion to suppress should have been granted (*id.* at pp. 10-11), the trial court erred in not ordering an evaluation regarding his competency to enter his plea (*id.* at p. 11), and the prosecutors "fluffed" the charges against him to "get the conviction" (*id.* at p. 12). The undersigned declines to address these arguments as they were presented for the first time in his Traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

19

Ground Two is procedurally defaulted and/or without merit because there is no showing of a due process violation. (ECF Doc. 11, pp. 19-20.)

For the reasons explained below, the undersigned concludes that Ground Two is without merit.[9] First, while Mr. McDaniel disagrees with the state court decision affirming his convictions and sentence, he does not show that he was denied due process in connection with his appellate proceedings. He sought and was granted leave to file a delayed appeal. (ECF Doc. 11-1, pp. 76, 84.) His motion for appointment of appellate counsel was subsequently granted (*id.* at p. 172) and his appeal was considered on the merits (*id.* at pp. 111-18). He was then granted leave to file an application for en banc consideration and reconsideration of the state court of appeals's decision. (*Id.* at pp. 131-32.) That application was considered and denied by the court of appeals. (*Id.* at pp. 133-40.) With the assistance of counsel, Mr. McDaniel filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court. (*Id*. at pp. 141-57.) The Supreme Court of Ohio declined to accept jurisdiction of his appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (*Id.* at p. 166.) Given the foregoing, the undersigned cannot conclude that the state court of appeals or Supreme Court of Ohio denied Mr. McDaniel due process when they failed to grant his appeal or declined to accept his jurisdictional appeal for review.

Second, as to his claim that he was denied due process because the trial court did not explain the rights he was giving up by entering his guilty plea, he again fails to demonstrate a denial of due process. First, he fails to identify the rights he was not properly advised of. To the extent he is again arguing he was not properly advised of his right to a jury trial, as discussed in

---

[9] Although Respondent argues that Ground Two is procedurally defaulted, procedural default is not a jurisdictional bar to the Court's review of the merits of a claim. *Moss v. Miniard*, 62 F.4th 1002, 1010 (6th Cir. 2023) (citing and quoting *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006)), *cert. denied,* 144 S. Ct. 1004, 218 L. Ed. 2d 21 (2024). Given that the undersigned has found no merit in the claims articulated in Ground Two, the undersigned finds it unnecessary to address Respondent's alternate argument for dismissal based on procedural default.

20

Section III.C.4., *supra*, the state court of appeals's determination regarding that claim is entitled to deference under AEDPA.  Second, a review of the plea colloquy at Mr. McDaniel's plea hearing on August 7, 2017 (ECF Doc. 11-2, pp. 11-14), written plea agreement (ECF Doc. 11-1, p. 43), and waiver of trial by jury (*id.* at p. 42) show that Mr. McDaniel was informed of the rights he was waiving by pleading guilty.  Accordingly, his claim that the trial court violated his due process rights by not explaining the rights he was giving up when he pled guilty lacks merit.

For the reasons set forth above, the undersigned recommends that the Court **DENY** Ground Two on the merits.

### E.       Ground Three is Procedurally Defaulted

Mr. McDaniel asserts in Ground Three that his sentence of twenty-four years to life constitutes cruel and unusual punishment under the Eighth Amendment because he was sentenced for crimes he did not commit.  (ECF Doc. 1, p. 8, ECF Doc. 13, pp. 12-18.)  Specifically, he argues that he did not commit rape, but was told by his attorney that he had no choice but to take the plea.  (*Id.*)  Respondent argues in response that the sentencing claim in Ground Three is procedurally defaulted because it was never presented to the state courts.  (ECF Doc. 11, p. 10.)  Alternately, Respondent argues Mr. McDaniel's sentencing claim is without merit.  (*Id.* at pp. 20-24.)

Mr. McDaniel does not argue that he presented Ground Three to the state courts, but instead argues that he is innocent of the crimes for which he plead guilty and that his sentence therefore constitutes cruel and unusual punishment.  (ECF Doc. 13, pp. 4-5.)  He also argues for the first time in his Traverse that he is the victim of malicious prosecution, and his sentence is disproportionate to that of sentences imposed on others committing even more serious or violent crimes.  (ECF Doc. 13, pp. 12-18.)

It is undisputed that Mr. McDaniel did not present this sentencing claim in his direct appeal or at any other level of state court review.  Because he failed to raise the sentencing claim at each and every level of state court review, he procedurally defaulted the claim.  *See Williams*, 460 F.3d at 806  ("[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'");  *see also Baston*, 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Accordingly, Ground Three is subject to dismissal based on procedural default, unless Petitioner can establish (1) cause and prejudice to excuse the procedural default or (2) that a fundamental miscarriage of justice would occur if the claim is not considered.  *See Coleman*, 501 U.S. at 750.

Mr. McDaniel apparently seeks to excuse the procedural default when he argues that his "appellate attorney felt the original argument was valid enough to get [him] back to court" (ECF Doc. 1, p. 2; *see also id*. at p. 9) and that he is innocent of the crimes (ECF Doc. 13, pp. 5-6, 17).  For the reasons explained below, the undersigned finds that Mr. McDaniel has not presented a sufficient basis to excuse the procedural default of Ground Three.

First, while "[a]ttorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, claims of ineffective assistance of counsel cannot provide cause for the procedural default of a claim if the ineffective assistance claim *itself* is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see also Landrum v. Mitchell,* 625 F.3d 905, 916 (6th Cir. 2010).  Here, the record shows that any claim of ineffective assistance of appellate counsel was procedurally defaulted.  A defendant claiming ineffective assistance of appellate counsel must apply to the Ohio Court of Appeals to reopen the direct appeal under Ohio App. R. 26(B).  *Landrum*, 625 F.3d at 916.  Here, Mr. McDaniel did

22

not file a rule 26(B) application, and he presents no grounds for finding "cause" to excuse the procedural default of his ineffective assistance of appellate counsel claim.  Thus, alleged ineffective assistance of appellate counsel cannot serve as "cause" to excuse his procedural default of his sentencing claim in Ground Three.  *Edwards*, 529 U.S. at 453.

Second, "[a] fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren*, 440 F.3d at 764 (quoting Murray, 477 U.S. at 496).  For a claim of actual innocence to be credible in this context, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  He must further "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id.* at 327.  This standard is intended to permit petitioners with "truly extraordinary" cases a "meaningful avenue by which to avoid a manifest injustice."  *Id.* (internal quotations omitted).  Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Mr. McDaniel argues that his guilty plea does not prove his guilt because "innocent people do in fact plead guilty to obtain the benefits of plea bargains."  (*Id*. at p. 17 (internal quotations and citations omitted).)  But he does not identify new reliable evidence to support a credible claim of innocence.  He only offers after-the-fact protestations of innocence that are both self-serving and undermined by the statements he made at his sentencing hearing:

I'd like to start by saying that I take complete responsibility for my actions.

I realize the things that I've done are wrong.

In my life I've always been a good person with good morals and values and I failed.

I let myself and my family down. I feel completely sickened over the things that have happened.

I just want now for my daughters and my family to start to heal and find peace in the terrible situation that I've created.

I hope that they can move forward in their lives and find it in their hearts to forgive me one day. Even though I know that I don't deserve the forgiveness.

Your Honor, knowing that I have to live with the guilt of what I've done, my beautiful family that I love and loved and who loved and trusted me is going to haunt me for the rest of my life.

I know that whatever sentence I'm given that I deserve and I will use the time in the most productive way possible, to seek all the treatment possible and to get the help required to make sure that I never hurt anyone ever again.

I also plan on using my time to further my education to be the most productive person I can be.

Your Honor, I don't deserve mercy for what I've done nor am I looking for sympathy for my actions.

I can't apologize enough for the pain and suffering that I've caused my family.

All that I can do is pray that you see past my terrible actions and that person that I truly am and allow me the opportunity to prove to the court and to my family that I can and will change for the best and be able to become a productive member of society.

(ECF Doc. 11-2, pp. 28-30.)

For the reasons set forth above, the undersigned concludes that Mr. McDaniel has failed to demonstrate "cause" to excuse his procedural default,[10] or to present new evidence sufficient to excuse the procedural default based on "actual innocence."  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Three based on procedural default.[11]

---

[10] Because Mr. McDaniel has failed to demonstrate the requisite cause to excuse his procedural defaults, it is not necessary for this Court to consider the issue of prejudice. *See Engle*, 456 U.S. at 134, n. 43.

[11] Given that Ground Three is subject to dismissal based on procedural default, it is not necessary for the Court to address Respondent's alternate merits argument.

24

**F.      Ground Four is Procedurally Defaulted**

In Ground Four, Mr. McDaniel alleges that he was denied the right to effective assistance of trial counsel under the Sixth Amendment on two separate occasions.  (ECF Doc. 1, p. 10, ECF Doc. 13, pp. 18-24.)  First, he argues he was denied the constitutional right to counsel when trial counsel coerced him into pleading guilty to crimes he did not commit ("coercion claim").  (ECF Doc. 1, p. 10.)  Second, he argues he was denied his constitutional right to counsel when trial counsel did not object after the trial court failed to adequately advise him of the rights he would waive by pleading guilty ("objection claim").  (*Id*.)  In response, Respondent argues that the ineffective assistance of counsel claims are procedurally defaulted because they were never presented to the state courts (ECF Doc. 11, p. 11), and are without merit (*id*. at pp. 24-25).

To the extent Petitioner's ineffective assistance of trial counsel claims could have been litigated on direct appeal, Ohio law precludes Mr. McDaniel from raising the claims in state post-conviction proceedings.  *See Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) (citing *State v. Perry*, 10 Ohio St.2d 175 (1967) (syllabus)); *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012) (citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982)).  Conversely, if "the competence of trial counsel c[ould] only be resolved by resorting to evidence outside the [trial] record," Ohio law may permit the claims to be raised in state post-conviction proceedings.  *Greer*, 264 F.3d at 675 (citing *Cole*, 2 Ohio St.3d 112).

Here, it appears that the "objection claim" in Ground Four would have been apparent from the trial record, since it challenges trial counsel's failure to object to the trial judge's plea colloquy.  Thus, Mr. McDaniel was required to raise that claim on direct appeal.  As to the "coercion claim," which challenges trial counsel's alleged acts in coercing Mr. McDaniel to plead guilty, it is not clear whether the claim would have been apparent from the trial record or

25

would require consideration of outside evidence. If the consideration of outside evidence was necessary to the claim, Mr. McDaniel may have been permitted to raise the claim in state post-conviction proceedings. But these distinctions are largely academic because Mr. McDaniel did not raise his ineffective assistance claims on direct appeal or in post-conviction proceedings. Indeed, he did not file any post-conviction petitions, and the time to do so has passed.[12] *See* O.R.C. § 2953.21(A)(2)(a) (requiring petition for post-conviction relief to be filed no later than 365 days after the transcript is filed in the court of appeals on direct appeal).

Because Mr. McDaniel failed to raise his ineffective assistance of trial counsel claims at every level of state court review (or indeed at any level), the undersigned concludes that the ineffective assistance of trial counsel claims in Ground Four are procedurally defaulted. *See Williams*, 460 F.3d at 806; *see also Baston*, 282 F. Supp. 2d at 661. Accordingly, Ground Four is subject to dismissal based on procedural default, unless Mr. McDaniel can establish (1) cause and prejudice to excuse the procedural default or (2) that a fundamental miscarriage of justice would occur if the claim were not considered. *See Coleman*, 501 U.S. at 750.

Mr. McDaniel does not assert that he presented his ineffective assistance of trial counsel claims to the state courts, but instead argues that his appellate counsel was ineffective because he failed to assert those claims on direct appeal (ECF Doc. 13, p. 5; *see also* ECF Doc. 1, pp. 10, 12) and failed to tell Mr. McDaniel that he needed to file a collateral attack to assert the claims (ECF Doc. 13, p. 19). Arguing that the time has now expired for him to raise his ineffective assistance of trial counsel claim in a collateral state court proceeding, Petitioner asserts that this federal habeas proceeding is now the only remaining avenue available for him to present his ineffective assistance of trial counsel claims to the courts. (*Id*. at pp. 19-20.) Thus, Petitioner

---

[12] Petitioner also has not shown that he meets the requirements in O.R.C. § 2953.23(A)(1) for filing a late petition.

seeks to excuse the procedural default of the claims in Ground Four based on cause and prejudice resulting from the alleged ineffectiveness of his appellate counsel.

Beginning with the argument that Petitioner's appellate counsel was ineffective because he did not raise certain challenges to the effectiveness of trial counsel on direct appeal, this argument suffers the same fate as a similar argument discussed in Section III.E., *supra*.  Because Mr. McDaniel did not file an Ohio Rule 26(B) application challenging the effectiveness of his appellate counsel, any claim regarding the effectiveness of appellate counsel was procedurally defaulted and cannot form the basis for a finding of "cause" to excuse the procedural default of the claims in Ground Four.[13]  *See Edwards*, 529 U.S. at 453; *Landrum,* 625 F.3d at 916.

As to the argument that Petitioner's appellate counsel was ineffective because he did not advise Mr. McDaniel "that he had to file a collateral attack on his case via statute ORC 2953.21 in order to make ineffective assistance of trial counsel claims, nor that he would have to pay for counsel to represent him just to make such claims" (ECF Doc. 13, p. 19), this argument is only potentially relevant to the "coercion claim" in Ground Four, and even then it is only applicable to the extent that the coercion claim would not have been apparent from the trial record and therefore could only be resolved based on outside evidence, as discussed above.

Mr. McDaniel's argument that his appellate counsel was ineffective because he did not provide advice regarding certain post-conviction relief procedures generally lacks merit because there is no right to counsel for collateral or post-conviction proceedings.  *See Smith*, 463 F.3d at 433 (citing *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings") (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987) and *Murray v. Giarratano*, 492 U.S. 1 (1989))); *see also McClain v. Kelly*, 631 F. App'x 422, 429 (2015)

---

[13] As also discussed in Section III.E., *supra*, Petitioner also has not presented any argument or evidence to support a finding of "cause" for the procedural default of his challenge to the effectiveness of appellate counsel.

27

("[A]lleged attorney error in state post-conviction proceedings 'cannot constitute cause to excuse [a] default in federal habeas.'") (quoting *Coleman*, 501 U.S. at 757).

However, the Supreme Court has carved out a narrow exception to the general rule that attorney error in post-conviction proceedings cannot serve as "cause" to excuse a procedural default. *See Maritnez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 569 U.S. 413 (2013). Under the *Maritnez/Trevino* exception, a federal habeas court may find "cause" to excuse the procedural default of a claim for ineffective assistance of *trial* counsel based on ineffective assistance from counsel in *post-conviction* proceedings where: (1) the ineffective assistance of trial counsel claim was "substantial"; (2) there was "no" or "ineffective" counsel during the post-conviction proceeding; (3) the post-conviction proceeding was the "'initial' review proceeding" for the ineffective assistance of trial counsel claim; and (4) state law required the ineffective assistance of trial counsel claim to be raised in the "initial-review collateral proceeding."[14]  *See Trevino*, 569 U.S. at 423 (citing *Martinez*, 132 S.Ct. at 1318-19, 1320-21).

"Substantial claims" under the first prong of the *Maritnez/Trevino* exception "are those that petitioner demonstrates have 'some merit' under *Strickland's* two-prong standard." *See Morrow v. Tennessee*, 588 F. App'x 415, 422 (6th Cir. 2014) (quoting *Martinez*, 132 S.Ct. at 1318-19). Under the first prong of *Strickland*, courts must assess "counsel's performance and determine[s] whether the assistance was reasonable." *Morrow*, 588 F. App'x at 422 (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). Under the second *Strickland* prong, "there

---

[14] There is Sixth Circuit precedent that may permit a finding that the fourth prong of the *Martinez/Trevino* exception is satisfied even though Ohio allows ineffective assistance of trial counsel claims to be raised on direct appeal. *See White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277 (6th Cir. 2019) (citing *Trevino*, 569 U.S. at 417). Because the undersigned concludes that Mr. McDaniel cannot satisfy the first prong, that precedent need not be addressed herein.

28

must be a reasonable probability that, but for counsel's errors, the result would have been different."  *Id*. (citing *Strickland*, 466 U.S. at 694).

After considering the evidence before this Court, the undersigned concludes that the "coercion claim" stated in Ground Four is not "substantial" in the manner contemplated in the first prong of the *Maritnez/Trevino* analysis.  While Mr. McDaniel now argues that he was coerced into pleading guilty, the only evidentiary support he offers are vague, self-serving, after-the-fact statements in his own briefs.  Conversely, Mr. McDaniel stated under oath during his plea colloquy hearing that no one was "forcing or threatening" him "in any way to enter [the] pleas" and that he was satisfied with his attorneys.  (ECF Doc. 11-2, p. 14.)  Further, as detailed in Section III.E., *supra*, Mr. McDaniel made detailed statements during his sentencing hearing— which was held almost two months after his guilty plea—discussing the remorse he purportedly felt about committing the crimes to which he had pled guilty.   (ECF Doc. 11-2, pp. 28-29.) Thus, Petitioner has not shown that the "coercion claim" alleged against his trial counsel has "some merit" under the *Strickland* standard.  The undersigned therefore concludes that Mr. McDaniel is not entitled to avail himself of the narrow exception carved out in *Martinez/Trevino* to excuse the procedural default of his ineffective assistance of trial counsel "coercion claim."[15]

The undersigned also concludes, for the reasons detailed in Section III.E., *supra*, that Mr. McDaniel has failed to show that the procedural default of the claims in Ground Four may be excused on the basis of "actual innocence."

For all of the reasons set forth above, the undersigned concludes that Mr. McDaniel has failed to demonstrate "cause" to excuse the procedural default of the ineffective assistance of

---

[15] Petitioner also has not identified evidence to support a finding that appellate counsel knew about alleged coercive actions by trial counsel, as necessary to show appellate counsel was on notice that he should advise Mr. McDaniel of procedural requirements to file a post-conviction petition regarding the ineffective assistance of trial counsel.

29

trial counsel claims asserted in Ground Four[16] or to present new evidence sufficient to excuse the procedural default based on "actual innocence."  Accordingly, the undersigned recommends that the Court **DISMISS** Ground Four based on procedural default.[17]

### IV.    Recommendation

For the reasons stated above, the undersigned recommends that the Court **DENY** and/or **DISMISS** the Petition.  The Court should **DENY** Ground One as not cognizable on federal habeas review and/or because it lacks merit; **DENY** Ground Two because it lacks merit; and **DISMISS** Grounds Three and Four as procedurally defaulted.

May 4, 2026

/s/ Amanda M. Knapp
Amanda M. Knapp
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[16] Because Mr. McDaniel has failed to demonstrate the requisite cause to excuse his procedural defaults, it is not necessary for this Court to consider the issue of prejudice. *See Engle*, 456 U.S. at 134, n. 43.

[17] Given that Ground Four is subject to dismissal based on procedural default, it is not necessary for the Court to address Respondent's alternate merits argument.